May it please the Court, this is a case about someone who is convicted of one crime but sentenced for another. Under Watts. Your Honor, I take issue with Watts only because it didn't involve a lesser-included offense. It didn't involve a special verdict. When you say it, are you talking about Watts? Watts. Watts talked about a general verdict where you could not assume what was known in the jury's mind. We don't have that issue. The only thing that was disputed at all was the use of the weapons and whether it should be, whether it was reasonably foreseeable to my client, Mr. Johnson. He never contested the bank robbery at all, ever. And never contested his role as a getaway driver. It was solely this use of the weapons, which is an insurance policy of asking for a lesser-included offense instruction, which they got. Because, and that, I believe that under the case law that I cited, Your Honor, under Carter and Castillo, I think that it means that the government conceded at least that bank robbery, or unarmed bank robbery as we refer to it, is a subset of armed bank robbery. And that the government conceded that a rational jury could have believed that Mr. Johnson was guilty of bank robbery, but not guilty of armed bank robbery. And so it was that the special verdict was given to the jury over objection. There was some finagling with Rule 29's language, the lesser-included jury instruction. But ultimately, what Mr. Johnson was found guilty of was bank robbery. The first indictment that I was not counsel when that proceeding was taking place, but he was originally charged with conspiracy to commit armed bank robbery in Count 1. That was superseded, that indictment was superseded, and in the indictment that we went to trial on, he was charged with conspiracy to commit bank robbery. The armed bank robbery, Count 2, was changed to a strict Pinkerton liability theory, as well as 924C. So the government was able to eliminate any kind of requirement of knowledge on the part of Mr. Johnson. Almost just a liability, if you will, based on their view of what Pinkerton is. But I think under the Johnson case, it is what is particular to this defendant, what is reasonably foreseeable to this defendant. And I don't believe that when you have a statute that contemplates the use of a weapon, let me back up, it can't be the case that all bank robberies are generically using weapons. Otherwise, Congress would not have delineated a separate offense for armed bank robbery, which carries a higher sentence of 25 years. Well, the way I understand Watts, correct me if I'm wrong, you can use human use conduct with respect to which somebody was acquitted. That's correct, Your Honor. When you give the sentencing. That's correct, Your Honor. But here, we're not using, you know, here what's not at issue is Mr. Johnson's conduct. It's not that Mr. Johnson used a weapon, and then he was found not guilty, or found guilty only of a bank robbery. Here, he's being tagged with his co-defendant's use of weapons inside the bank. And we have, and what was not, when you look at the quote. And you say there's a legal impediment to that. I believe as a matter of law, as a matter of law, the weapons enhancement cannot be applied to Mr. Johnson for several, on the basis of several theories. One, which Watts does not address, is the Sixth Amendment argument that is sort of percolating through the Apprendi and its progeny under Carter, Castillo, and I can't pronounce the other case, the Sadezlan, I'm not sure, I'm sure I'm familiar with the name of that case. But Watts really was concerned with the Fifth Amendment double jeopardy claim. And the defendant there was saying, hey, wait a minute, I can't, you can't come back and punish me for conduct which I was acquitted of. That violates the Fifth Amendment. And the Supreme Court said? And the Supreme Court said, no, it doesn't, because it's a general verdict. We don't know what was in the mind of the jury. But here, Your Honor, what we have is, we have a specific verdict that talks about use of a weapon. It was the only issue at trial that was used. We know what the jury did not find. There's no, it's not a general verdict. We're not guessing about it. And we're talking about conduct that belongs to co-defendants, not Mr. Johnson. Well, I don't understand what difference it makes if the conduct belonged to co-defendants, because in situations like this, that's routine. Conduct of one defendant is visited on another defendant. I understand that, Your Honor. But not in the context of having the government, it's asked for, not in the context of having the government ask for a lesser-included instruction. They realize the weakness in this case. So that's the difference in this case? They ask for an instruction? I believe that they ask for an instruction, Your Honor. I believe that they ask for an instruction, Your Honor. Are there any cases that focus on that? I believe I cited the Carter case. Forcing this result? Do you think Carter does that? I think Carter does talk about that, Your Honor. I think Carter talks about the, it talks about subsection B in the statute. And it says that subsection B is not a subset of subsection A, because not all the elements line up. But subsection D, under the case law in the Ninth Circuit, is clearly, unarmed bank robbery is clearly a subset of armed bank robbery. So by charging Mr. Johnson under Pinkerton liability and having him go to trial on that, and then at the last second saying, I'm worried my evidence might not support that, so I'm going to ask for an unarmed bank robbery. For the sentencing enhancement, you're looking at a different level of proof required. So I've had a hard time understanding the logic of why the sentencing enhancement follows from the, either from the verdict or from the lesser included offense. Well, I'm sorry if I didn't articulate it well enough in my papers, Your Honor. I believe what I'm trying to argue is that it's not a sentencing factor. Use of the weapon is not a sentencing factor. It is an element of armed bank robbery. It's both. It becomes both. Your Honor, I don't believe so, Your Honor. I think that the statutory scheme sets up two kinds of bank robberies. I mean, more. There's an embezzlement also. But with respect to subsection D and A, there's an unarmed bank robbery statute, which provides for a 20-year sentence. Right. And then there's an armed bank robbery statute that provides for a 25-year sentence. And he was sentenced under the bank robbery statute. He was sentenced under the bank robbery statute. So there's no apprendi problem. Well. Because the sentence is within the maximum for that. I understand the sentence was within the maximum of that, but it's still the use of the weapon was an element of the offense. What I hear your argument boiling down to is if you've got some conduct on which somebody wasn't convicted or in which somebody was acquitted, you can't use that in the sentencing context, period. No, I'm not arguing that, Your Honor. I'm not. I'm saying in this particular case, based on these facts. Because they asked for an instruction. Because they asked for a lesser included instruction and also because there was a special verdict. So it's not Watts. We don't have the same case as Watts. And I don't believe that under the Sixth Amendment. And what did the special verdict say? The special verdict said that. Did it say, can we find that he did not use a firearm? If you cannot, if you cannot agree that the defendant is guilty of armed bank robbery, but you agree, but all of you agree that he is guilty of bank robbery, then you can't. But there's no finding that he didn't use a firearm or that he didn't know that firearms were going to be used. That's the point that I was making. I, my argument is that it's implicit in the verdict, Your Honor. Well, this is not unanimous. I think that I'm not guilty from that. Your Honor, because. Except by extension of the case law in Carter and so forth. Not Carter, but Price and Green. I agree. They're not unanimous. I mean, they haven't. There's no verdict. There's nothing. Well, Your Honor, I believe that what, under this, under the scenario that the district court talked about and the government's counsel talked about when we were, when we were resolving this issue, is what the court said was if, if he was convicted of the armed, of the 924C, but he was not convicted of armed bank robbery, the 924C could not stand. That conviction could not stand. Everybody was. I can understand that. But what I don't understand is how you extrapolate from that to the sentencing context. Because the object of the conspiracy that was proved here was bank robbery, not armed bank robbery. Yes. So what? For sentencing purposes. If you can consider relevant conduct at all, then how does it, the one follow from the other? It's a different standard of proof. I understand that if you have a true sentencing factor. But I'm saying in this context, use of a weapon is not a sentencing factor. It was an element of the, of the greater offense of armed bank robbery. And the government, by tendering that instruction, conceded that it would stand by the bank robbery. Saying that, you know, at least conceding that a rational jury could find him guilty of the bank robbery, but not of the armed bank robbery. And they took that insurance policy, thereby limiting that element of the offense. Do you think Pinky survives Watts? I do. Tell me why. Because, again, it's a lesser included offense, which I think takes it into a different arena. Watts was not concerned with that. It wasn't, but you know, Pinky talks about the language in Pinky and the predecessor cases basically used the kind of language that the Supreme Court seemed to reject in Watts. I mean, if Pinky controls, then that's the end of the story. You win. But I have serious doubts whether we can say that Pinky survived Watts. Well, now, remember that there are only, these cases are only dealing with the Fifth Amendment challenge and not the Sixth Amendment challenge. Right. And at least Justice Scalia has said that in the Sazatlan case, that for purposes of the Fifth Amendment, the definition of what an offense is really not that different in terms of the Sixth Amendment. Well, Sazatlan, is that the Pennsylvania capital case? That's right. Yeah. So that was a capital murder case where you really did have the aggravating factors as an element of the offense. It's hard to see, for me, that you can take the sentencing factors in this case and conclude that they are elements of the offense that would take it above the statutory maximum in bank robbery. I understand your theoretical argument, I guess, but Sazatlan is a different case, I think. But then, Your Honor, what would be the point of having two separate statutes? It's not true that all bank robberies involve a gun. I take your point, but I think it gets back to whether or not it's relevant conduct as opposed to an element of the offense. See, I mean, you take a capital case, you can't be guilty of capital murder except for aggravating factors. And here, you can be guilty of bank robbery, and you may have an act – it seems to me you can have a sentencing enhancement quite apart from that. Tell me why I'm wrong. Well, the reason why you're wrong, Your Honor, is if you have – because of the statutory scheme of bank robbery, it's not even similar to a narcotics conspiracy. What is the object of the 371 conspiracy? It's a general conspiracy statute that has as its object either this crime or that crime. The object of this crime was bank robbery, not armed bank robbery. And it seems to me that this is almost a disingenuous way of pleading, where you can just eliminate any kind of scienter by saying, oh, well, it's just Pinkerton, and all the weapons – the element of use of a weapon applies even if you have a conviction for bank robbery that's not armed bank robbery. You know, what you're talking about is a debate that was very robust when the sentencing guidelines were adopted. Well, what are we going to do with uncharged conduct, conduct that there's no conviction on, unacquitted conduct, and Section 3661 won the debate. No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence, which is what Watts said. Once you've got the guy convicted, then guess what, folks? There is no limitation on the information. And they even say acquitted conduct, and they talk about the reasons for that, and that's because an acquittal on criminal charges doesn't prove the defendant is innocent. It merely proves the existence of a reasonable doubt. Without specific jury findings, no one can logically or realistically draw any factual finding inferences. So that's why I ask if there's a finding that no firearm was used, and there really isn't one. So, I mean, you get down to Watts, and it says it's two different ball games. You have the conviction part, and then once you have the conviction part, then all bets are off. You go to preponderance of the evidence, in some cases clear and convincing on, now what do we do with the person on the offender and the offense characteristics? And so maybe there's a constitutional prohibition in there, and that's why you're using the Sixth Amendment. But in terms of 3661 and what Watts did, I mean, it seems to throw everything wide open. And you get into a different area. You take a look at the conduct with no limitation on what that particular defendant did. Okay. Well, but conduct is always understood in conspiratorial concepts, you know, and your buddies and your armed robberies and stuff like that. That's always been visited on people. But your agreement, the scope of your conspiracy is limited by the objective that's fled and proved. No limitation. That's the language of 3661. No limitation. I believe if there's an element of it. You're asking us to find a limitation. I'm asking, I'm saying that 3661 does not apply to elements of the offense. It applies to sentences. Where does it say that? Well, Your Honor, I believe that Carter talks, Carter and even in Watts stressed the conduct of the person. But I believe that if you look at Carter, where they construed, where it was a situation that's almost similar because, well, it's not similar. The defendant was asking for a lesser included instruction in the court. In discussing those two statutory constructs, said that subsection B, which is essentially the embezzlement provision in the statute, was not a subset, was not a lesser included. And I think that the lesser included offense here of armed bank robbery versus bank robbery takes this completely out of Watts. Do you have any other points, or would you like to save some time to rebut? Oh, no. Well, I did submit, Your Honor, your decision in the Cortez case, which concerned the acceptance of responsibility, Your Honor. And I think that it's pretty clear that Judge Baird did not give him acceptance because she believed he went to trial and he put the government at risk. Didn't she say, I didn't believe you then and I don't believe you now? You're still not telling the truth? She did say that she didn't believe his trial testimony. And she didn't believe him ever, is what I read her saying. I didn't believe you then and I don't believe you now. She's still saying your credibility is still deficient. Didn't she say that? I don't think she said it. I think she said that she did not believe him. But she said you went to trial to dispute a factual issue. She also said that. And that's a line of four in page 718. Can I ask you one question on the practical effect of your Rule 29 appeal? What is it? The practical effect is that were we to go back, he would not be able to be prosecuted. Right. I mean, that's to sort of put an end to it. It has no current practical effect. If it were to go back, then it would prevent them from re-prosecuting. I got you. Okay. Here's the judge's quote. I'm convinced that you are not telling us the truth today or at your trial. ER 711-715-726. Yes, Your Honor. Okay. Good morning. May it please the Court. I'm Assistant United States Attorney Cheryl Murphy, and I'll be arguing for the government today. Your Honors, there was no clear error in the district court's application of the sentencing guidelines in this case, either with respect to the specific offense characteristics or with respect to the acceptance of responsibility. With regard to the specific offense characteristics, the district court did not clearly err in finding that the government had established by clear and convincing evidence that the co-defendant's conduct inside the bank, the use of the gun, the injury to the victims, and the physical restraint of the victims was reasonably foreseeable to the defendant, based on the particular facts of this bank robbery. The district court did not rely on a generalized notion that in any bank robbery, guns would be used or that in any bank robbery, victims would be injured. There was no testimony that supported, I guess, the inference. Let me put it this way. There was no direct testimony that Johnson ever saw a weapon, right? That's correct, Your Honor. And no testimony that he saw his co-conspirators go into the bank with a weapon, right? That's correct. So nobody affirmatively testified that he had a weapon, and the best we're left with is an inference that because the robbers went through the door with a weapon, that he must have known they were going to use it. Well, it's a little bit more than that, Your Honor. Okay. The inference is based on the detailed planning of this robbery and the defendant's involvement prior to the day of the robbery. Right. We have detailed planning. He's got credit cards, false names, got the vehicles. None of that testimony concerned a weapon, right? That's correct. And the co-defendants were, I guess, available to testify because they pled out and did not testify that he saw the weapon, right? That's correct. Or that he planned to use the weapon. That's correct. So we're left with the inference just by the eyewitnesses. And we have the two duffel bags that everybody concedes could have concealed the weapons in the backseat. That's right. And the characteristics of the vehicle that they drove. Because it's a big vehicle? No, there were two vehicles. Right. You had the navigator and the other car. They drove 2,000 oaks in the navigator. Right. Then they got into the Neon, which they had hidden there the day before. Right. All three of them into the car that the defendant had claimed was too small to accommodate himself and his daughter in her car seat. And so there's the inference from the fact that they all traveled from the hiding point of the Neon to the bank with the weapons in a small car, three large men with a handgun and a large rifle, supports what clearly was the district court's view that the defendant's version of events, that the co-conspirators had somehow hidden the weapons from them. In the duffel bags. Right. And the large garment bag, right? They had a black bag and a green bag. They had, I believe the evidence is that they had a black bag and a green duffel bag. And at trial I guess it was conceded that the weapons would have fit in the bags. I believe that was conceded at trial, yes. Okay. So my only question is how do you get to clear and convincing from all that? Because basically you're basing it on an inference. I grant you preponderance on the inference. I think that's a reasonable conclusion. How do you get to clear and convincing? Well, Your Honor, I guess that is a question for the district court, that the district court resolved in the government's favor. I understand that. In this case. I'm asking you what's your best argument, that it goes beyond preponderance to clear and convincing. My best argument is each of the individual facts that we've just discussed, Your Honor, that when you put together all of these facts, even though it is just an inference, the inference is sufficient to reach the clear and convincing threshold, that it's not simply an inference based on one or two facts, that there's a compilation of evidence that supports it. Okay. I understand your position. Do you think Pinky survives Watts? I do not, Your Honor. Tell me why. Well, I do not because Watts particularly rejected the rationale of Pinky. Watts found that the court could rely on acquitted conduct at sentencing because of the different standards of proof between a reasonable doubt at trial and in Watts it was preponderance of the evidence. But in this case, clear and convincing evidence at sentencing. And in Pinky, the court held that the district court could not consider the acquitted conduct because it construed the jury's acquittal as a finding that the defendant had not in fact committed that conduct. Correct. In this case, though, we don't really need to resolve that issue, Your Honor, because we're one step removed from Pinky. We don't have an acquittal here. We merely have a hung jury on the armed allegation. What do you make of, then, Price and the Supreme Court cases that say that a conviction of a lesser-included offense necessarily means an acquittal of the greater offense? Well, I think that the jury's particular verdict in this case indicates that that's not what occurred in this case. But even if we assume, even if we assume. I don't think it happened in the Supreme Court cases either. There was a conviction on a lesser-included offense, and the Supreme Court said double jeopardy means you can't prosecute on a greater offense. It's an acquittal. Now, I guess the problem I see with Pinky is this, and that's why I think we may have to reach it. Taking those Supreme Court cases, that this amounts to acquittal of armed bank robbery, Pinky says you can't use that as a weapons enhancement, period. And I think we have to say that Watts overrules that, which we could because it's an appropriate charge. The reason I'm articulating this theory is so you can respond to it and tell me where I've gone amiss, if you think I have. In that case, Your Honor, then I think that this, assuming that that is correct, then I believe that this Court has to say that Watts overruled Pinky, because clearly the rationale of Watts applies here, where even if we take the lesser-included verdict to mean that the jury rejected the armed allegation, the district court is still applying a lower standard of proof than the jury would have applied. And the district court is still entitled to make that determination at sentencing that the government established the use of a gun by fair and convincing evidence. Your position is, then, summarizing, one, Watts trumps Pinky. Two, you would disagree in the first instance that Pinky applies in this case because of the various factors. Is that a fair summary? That's correct. Okay. With respect to the acceptance of responsibility issue here, again, the district court did not, did not clearly err in denying the reduction for acceptance of responsibility. And Ms. Kelly did provide me with a copy of the case that she just cited to the Court, the Cortez decision, and that does not alter the analysis. In Cortez, the district court seemed to be, seemed to believe that it was precluded from applying the, awarding the acceptance of responsibility reduction simply because the defendant went to trial on a factual dispute. We have more than that here. We have a defendant who went to trial not only to put the government to its burden on all the factual issues and not to preserve a constitutional or legal argument. We have a defendant who went to trial and affirmatively put on a defense which the Court found to be absolutely not credible. We have a defendant who denied and falsely contested what the Court found later to be was relevant conduct. And so under this ---- But he was acquitted of that, right? Well ---- I think that's the conundrum. I mean, Piper seems to say that if you're acquitted of the conduct you went to trial on, you can't deny a defendant an acceptance of responsibility reduction. So if you follow, if you ---- I gather you're contesting. But if you say he's acquitted of armed bank robbery and they didn't convict him on the 924C, it does sort of seem as though the Court is violating Piper on that. Well, I don't think so, Your Honor, because, again, he wasn't acquitted of the charges here. The jury was unambiguous. But then how do you apply the Supreme Court cases that we went through? Well, the jury was unambiguous. You said unanimous, not unanimous. Correct. Yeah. What I was saying is that as a matter of law, the Supreme Court seems to say conviction of a lesser included offense does legally acquit the person of the greater offense. I mean, you couldn't go back and charge him with armed bank robbery now, do you think? No. Double jeopardy would prevent that. That's correct, Your Honor. Yeah. That's correct. But it doesn't prevent the Court from considering that conduct and from considering the fact that the defendant was not truthful in his testimony. But it was only – I guess my concern about it is that his testimony that she rejected as untruthful only went to the armed bank robbery portion of it for which he was convicted. He admitted everything else. He said, oh, yeah, I planned this thing. I went there. I knew they were going to rob the bank. I just didn't know any weapons were involved. And she said, I reject your testimony on that. Actually, Your Honor, the defendant testified untruthfully with respect to other aspects of relevant conduct, with respect to the reckless endangerment and with respect to his own culpability in his behavior. He claimed that he only drove because the other defendants told him to drive that way. He denied running a red light. He denied driving at high speed, all of which was contradicted by the officers. And although the district court didn't apply the reckless endangerment enhancement, she did not do that sort of in an equitable analysis in order to prevent this defendant's sentence from being disproportionate to the co-conspirator's sentence. So it wasn't that she found those things weren't true. Well, we have to do that because the PSR – I mean, initially they recommended acceptance of responsibility. And the PS – the defendant PSR says, well, he's going to trial, so therefore we can't give him acceptance of responsibility, which would, I think, be clearly a problem. That would be a problem, Your Honor. But, again, the facts of this case don't indicate that the district court denied the acceptance simply because he went to trial. And how much more time did he get than the people who actually brandished the weapons? The person who brandished the weapon, I believe, got a 181-month sentence. And Timmons, the other defendant who pled guilty, who didn't go to trial, was sentenced to 123 months. So he got 45 more months than Timmons, who carried the rifle? Correct. But Timmons also – He pled out. Pled out. Right. And actually, Your Honor, Timmons – the original indictment charged a 924C, did not charge brandishing. It just charged use or carry. So the indictment that Timmons pled to was slightly different than the indictment that both Robinet and Johnson ultimately went to trial on. There's a witness referred to phonetically as Inglis. That's the guard? No, that is a female teller. She was the bank manager. A female teller who was a bank manager? Yes. And what did she say about the rifle? I believe that she is the one who said that when the defendants entered the bank, she saw the defendant with the very large gun out in his hand already as he entered the bank, which would contradict the defense theory that the co-conspirators had hidden their weapons in the bags from Mr. Johnson until they entered the bank and then they whipped their – the two co-defendants with all their gear, including a rifle, entered the neon, which Mr. Johnson said it was so small he could not accommodate himself and his daughter in the car seat, but he was able to accommodate three grown men in all the gear, including a rifle. Timmons and Robinet ran into the bank. Timmons had the rifle in his hands. The testimony was supported by Ms. Inglis. Okay. And he stood guard. Okay. Then both co-defendants holding these guns ran out of the bank. Your theory, Ms. Kelly, is preposterous, absolutely preposterous. And I do not believe it has any basis in fact. I guess that's the other side of clear and convincing. I guess so, Your Honor. She was clearly convinced. I think that the district court, although the district court did only go so far as to say that the conduct was reasonably foreseeable to the defendant, I think that her commentary and that the facts of the case and her conclusion about the defense theory indicates that the district court really did believe the defendant had knowledge of the weapons in this case. Your transcript refers to a surveillance tape. Did that show anything? Well, there was some dispute about that, Your Honor. The government argued at trial that one of the – it wasn't a tape. It was still photographs from the bank camera that was at the ATM outside the bank. So it captured the Dodge Neon driving up and defendants running into the bank. The government argued at – in closing that one of the bank surveillance photographs had a line across it that the government believed was the rifle that – I'm sorry, that Timmons was holding. The jury at one point asked for a magnifying glass in one of the notes that they sent. So I don't know if that was to try to examine the photograph more clearly, but it certainly was – was open to, I guess, the eye of the beholder, whether the guns were visible or not there. With respect to – would the Court like me to address the double counting issue? If you care to, briefly. Yes, Your Honor. As the district court found, each of the sentence special offense characteristics were supported by independent conduct in this case. The use of the weapon was based on Robinez striking the victim, Allie Sobsey, with the gun. The physical injury to the tellers was based on Mr. Sobsey's cuts and bruises from being dragged back and forth to the vault, that he suffered the rug burns. And the physical restraint of the victim can be independently based on Mr. Robinez forcing the other victim teller, Ms. Inglis, to the vault at gunpoint. So there is independent conduct supporting each of the specific offense characteristics. If there are no other questions, thank you, Your Honors. Thank you, counsel. Your Honor, starting with the surveillance tape issue, there's – I don't recall any line against it, and it is true that the jury did ask for a magnifying glass. But the short answer is we wouldn't be here today if that photograph displayed what the government claimed that it displayed. And it didn't, so it was inconclusive. And I just wanted to point, Your Honor, there was also an issue of another duffel bag, a green duffel bag, that did not get admitted into evidence because of foundational problems and not having a witness there. I did not have the witness there at the time when – close of the evidence. But there was a second duffel bag, and that argument is all contained at 321, at page 321 of the excerpt of records. And I believe – I understand that Judge Baird found that the argument was preposterous, Your Honor, and I'm not trying to impugn any evil intent to Judge Baird. I'm just saying that if you – I urge Your Honors to look again at the Carter decision. In that case, the Court talks about the lesser included element, an element as being an element of an offense that is not a sentencing factor. Watts does not deal with the Sixth Amendment challenge that a defendant – Yeah, but have you read recently our original decision in Watts at 67 Fed Third that the Supreme Court overruled? Did it rely on Pinckney and Brady? Because, you see, Watts – Pinckney clearly says that you just can't use acquitted conduct. Watts come along and said, that's wrong. You can use acquitted conduct. I understand that, Your Honor, but they're talking about it in the context of a double punishment, double jeopardy analysis. But the principle isn't stuck to that context. It arises out of 3661, and it says no limitations, and it says you simply – we said you simply can't use it, and the Supreme Court said, looking at Watts and Putre, that's flat wrong. Yes, you can. And for all the reasons we pointed out earlier. So it seems that the Supreme Court has repudiated our approach to this whole thing. In all of our cases, Watts, Putre, Brady, Pinckney, and the whole line of them. I think the Supreme Court is taking a different look at the sentencing scheme vis-à-vis the Sixth Amendment, where before they focused on whether or not it was going to be a violation of double jeopardy, whether it violated conduct. It seems to me that if they're not worried about an acquittal, everything else is easier. Well, Your Honor, in the context of – in the context of a lesser-included – you know, of someone who gets convicted of a lesser-included instruction, the law – the case law is that it's an implicit acquittal. And when it's an element of an offense, it's not a sentencing factor. The judge doesn't get to apply it. And I think it's disingenuous to say, oh, well, gee, he got convicted of the lesser-included So an element of the offense has more power than the offense itself. Well, that is – Because if you're acquitted of the offense, but you say if it's an element of the offense, then that has more power than the offense itself. No, I'm saying – Than all the elements. No, I'm saying if it's an element of the offense, the Sixth Amendment precludes it from being applied as a sentencing factor. If it's the offense, it doesn't preclude it. Well, it's not – But if it's an element of the offense. Yes, I think the Sixth Amendment does preclude that, because what you have in the other – in the other situation is uncharged conduct or conduct that – but not conduct that is part of a lesser-included offense. And I think that the Carter decision really addresses that issue, because they were discussing the element of applying the – an element that was an element of the offense versus a sentencing factor. And the Court there held that it was – that the sentencing factor should not be applied. I'm sorry. The element of defense is different than a sentencing factor. And that that – the Sixth Amendment does preclude application of that element to enhance a sentence. After oral argument, one of my law clerks will satisfy my curiosity by getting 67 fed third for our conference. I'm sorry that I don't – I don't have it in mind. That's what our law clerks are for. And, Your Honor, I just – I just wanted to say that the – that Watson addressed the Sixth Amendment and that the fact that the jury said that they were not unanimous, it doesn't have any legal effect on the – I mean, it doesn't rule or control what the legal effect of the conviction on a lesser-included offense is. It's an implied acquittal of the greater offense. And I'll submit it to that case. Thank you, counsel. Thank you both. The case has already been ordered and submitted. We'll move to the next case, Nissan Motor Company v. Nissan Computer Corporation.
judges: Trott, Rymer, Thomas